# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

GAIL E. TIMMONS,

        Plaintiff,

v.                          Civil Action 2:19-cv-3
                                Judge Michael H. Watson
                                Magistrate Judge Jolson

COMMISIONER OF
SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Gail E. Timmons, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the Administrative Law Judge under Sentence Four of § 405(g).

## I.    BACKGROUND

Plaintiff filed her applications for DIB and SSI on October 6, 2015, alleging that she was disabled beginning August 22, 2015. (Doc. 9, Tr. 212–19). After her applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held the hearing on February 28, 2018. (Tr. 43–66). On July 10, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 23–37). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on January 2, 2019 (Doc. 1), and the Commissioner filed the administrative record on March 12, 2018 (Doc.

9). Plaintiff filed her Statement of Errors (Doc. 10) on April 25, 2019, Defendant filed an Opposition (Doc. 12) on May 31, 2019, and Plaintiff filed her Reply (Doc. 13) on June 17, 2019. Thus, this matter is now ripe for consideration.

### A. Relevant Medical History and Hearing Testimony

Plaintiff's sole statement of error concerns the ALJ's analysis of her Irritable Bowel Syndrome ("IBS"). The ALJ helpfully summarized the relevant evidence:

> The claimant reported some bowel symptoms and the record documents she was diagnosed with irritable bowel syndrome (Exhibits B3F; B7F; B8F; B10F; B12F; B15F; B16F; B18F; B19F; B20F; B21F; B22F; B23F). In November 2014, prior to the alleged onset date, the claimant underwent colonoscopy testing, which showed diverticula in the sigmoid colon and a sessile polyp in the sigmoid colon (Exhibit B12F/5). Additionally, she evidenced some internal hemorrhoids (Exhibit B12F/6). During 2015, the claimant reported some abdominal pain, acid reflux, and bloating (Exhibit B7F/6). The claimant reported symptoms of diarrhea and intermittent rectal bleeding (Exhibit B8F/ 1, 3). The claimant continued to report abdominal pain and diarrhea into early 2016 (Exhibit B8F/5). In January 2016, the claimant was found to have a small hiatal hernia (Exhibit B12F/2). Further CT imaging showed no evidence of bowel obstruction, abdominal aortic caliber was normal and there was no evidence of retroperitoneal lymphadenopathy (Exhibit Bl OF). The claimant was tested for celiac disease, but was found negative for the condition (Exhibit B15F/ 1). She was diagnosed with irritable bowel syndrome (Exhibit B15F/3). In August 2016, she experienced an exacerbation of her symptoms and was assessed with acute diverticulitis with an abscess (Exhibit B19F/ 1, 4). Due to the condition, the claimant required surgical intervention, a sigmoid colectomy with end colostomy and drain placement (Exhibit B20F/ 1, 38, 43, 47-49; B16F/8). After the surgery, in October 2016, the claimant reported residual and diffuse abdominal pain (Exhibit B18F/7). Testing showed thickening of the wall of the colon in the left lower quadrant (Exhibit B18F/7). Testing evidenced a normal colon with normal rectum, without masses and no further diverticulosis (Exhibit B23F/5). A month later, in November 2016, the claimant underwent a colostomy takedown with primary colorectal anastomosis (Exhibit B21F/ 13). Given the prior finding of a hernia, in July 2017, the claimant underwent the surgical procedure to repair the condition (Exhibit B22F/1, 10-11). Further, with the treatment modalities noted, the most recent evidence of record from April 2018 documented no acute findings during an abdominal CT, exhibiting no evidence of ongoing diverticulitis (Exhibit B23F/8).

(Tr. 30).

On multiple occasions, Plaintiff reported frequent diarrhea and the need to use the restroom four to ten times a day. (Tr. 423, 460, 505). "The record supplied no reports of fear to leave the home due to bowel related incontinence or accidents and there was no discussion of need to wear adult protective undergarments with medical/treatment providers." (Tr. 31).

### B. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirement through March 31, 2018 and had not engaged in substantial gainful employment since August 22, 2015, the alleged onset date. (Tr. 26). The ALJ determined that Plaintiff suffered from the following severe impairments: monocular vision; irritable bowel syndrome; an affective disorder; and an anxiety disorder. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 27).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [T]he claimant has the residual functional capacity to perform a full range or work at all exertional levels but with the following nonexertional limitations: the claimant would be precluded from climbing ladders, ropes, and scaffolds and could occasionally balance. Required reading should be in large print, 10 point. The claimant would be precluded from commercial driving and should avoid the use of moving or hazardous machinery. She should avoid exposure to unprotected heights and hazards. The claimant could perform simple, routine, repetitive (1-4 step) tasks. The claimant would be allowed off task 5 percent of the workday. She would require a low stress job, defined as only occasional changes in the work setting. The claimant could occasionally interact with the public, coworkers, and supervisors. She could have occasional depth perception. The claimant would be limited to the performance of occupations that do not require binocular vision. She should avoid exposure to extreme bright lights, including stage lights, headlights, and bright inspection lighting, but normal home and office lighting is acceptable.

(Tr. 28). Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 29).

3

In developing the RFC, the ALJ reviewed the physical assessments completed by state agency consultants:

> The consultants opined the claimant showed no exertional limitations, but evidenced nonexertional limits, including postural limits, vision limits, and environmental limitations. The undersigned finds environmental and vision limits consistent with the claimant's history of monocular vision, and limited depth perception with preclusion on driving, as well as her history of gastrointestinal issues. However, given her reports of vision loss and statements that she at times runs into things, the undersigned finds greater postural limits. Thus, the undersigned finds the statements persuasive and overall affords them some weight.

(Tr. 34). Continuing, the ALJ reviewed the mental assessments completed by state agency consultants and concluded that, "given her combination of mental conditions and reports of physical pain, the undersigned finds the claimant would be more limited, requiring some additional time off task." (*Id.*).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff raises a single error to the Court, arguing that the ALJ's RFC analysis is not supported by substantial evidence. (Doc. 10 at 6–9). Specifically, Plaintiff contends that the ALJ's RFC failed to account for one of her severe impairments, IBS. (*Id.*).

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). Ultimately, "the ALJ must build an accurate and logical bridge between the evidence and his conclusion." *Waye v. Comm'r of Soc. Sec.*, No. 1:18-CV-201, 2019 WL 364258, at *5 (S.D. Ohio Jan. 30, 2019), *report and recommendation adopted*, No. 1:18CV201, 2019 WL 718542 (S.D. Ohio Feb. 20, 2019) (citing *Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–546 (6th Cir. 2004); *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)).

In analyzing Plaintiff's RFC, the ALJ thoroughly reviewed the medical record and opinion evidence. (Tr. 28–35). Consistent with that thorough review, the ALJ provided a detailed RFC with numerous nonexertional limitations. (Tr. 28). But the RFC analysis is lacking in one key respect: The Undersigned is unable to discern which, if any, of those nonexertional limitations address Plaintiff's IBS.

Here, the ALJ concluded that Plaintiff's IBS was a "severe" impairment because it "had more than a minimal limiting effect on the claimant's ability to perform basic work activity." (Tr. 26 (citing SSRs 85-28 and 96-3p)). That was a reasonable conclusion to draw based on the record. (*See, e.g.*, Tr. 30 (detailing Plaintiff's symptoms and treatment for IBS and related gastrointestinal issues)). Having reached that conclusion, the Undersigned would have expected the RFC analysis to address the "limiting effect" of IBS on Plaintiff's ability to perform basic work activity. Perhaps the ALJ concluded that Plaintiff "would be allowed off task 5 percent of the workday," (Tr. 28), to address Plaintiff's IBS. (*See* Tr. 34 ("[G]iven her combination of mental conditions and *reports of physical pain*, the undersigned finds the claimant would be more limited, requiring some additional time off task." (emphasis added))). But that is not clear from the face of the ALJ's decision. *Cf. Waye*, 2019 WL 364258, at *5 (citing *Wilson*, 378 F.3d at 544–546; *Fleischer*, 774 F. Supp. 2d at 877) ("[T]he ALJ must build an accurate and logical bridge between the evidence and his conclusion."). Remand is appropriate to permit the ALJ to clarify how he accounted for the limiting effect of Plaintiff's IBS in his RFC analysis.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the Administrative Law Judge under Sentence Four of § 405(g).

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination

of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: October 23, 2019        /s/ Kimberly A. Jolson
                              KIMBERLY A. JOLSON
                              UNITED STATES MAGISTRATE JUDGE